This action is founded upon the provision of the Revised Statutes, which authorizes any person, or his personal representatives, who shall, on any loan or forbearance of money, have paid or delivered any greater sum than is allowed by law, to recover from the person to whom the same was paid, or by whom the same was received, the amount so paid, provided the action is brought within one year after such payment. (1 R.S., 772, § 3.) Assuming that the bank is a person within the meaning of this act, and that the plaintiff is his personal representative, we are to inquire whether the action can be maintained. The plaintiff represents the bank, and stands in its position. If the bank could maintain the action, he can; and it follows, that, if the bank could not maintain it, he cannot. He represents no greater right or higher equities in this matter than those possessed by the bank. Previous to the act of 1850, corporations, in reference to the provisions of the statute of usury, stood in the same position as individuals. They could, and did, avail themselves of the provision of the statute, to be released from their contracts affected with the taint of usury. The celebrated case of The Dry Dock Bank v. The American Life and TrustCompany (3 Comst., 344), is an instance of a corporation availing itself of the statutes to prohibit usury, for the purpose of relieving itself from its contracts. It had committed usury, and had derived a benefit therefrom, and then came into a court of equity to punish its confrere in guilt by repossessing itself of the property parted with, whilst retaining for its own benefit what it had received from the opposite party. This court, in obedience to the positive mandate of the statute, had to lend its aid to the perpetration of such gross injustice. It is not surprising that an act which produced such results should have been stigmatized, by one of the learned and eminent judges of this court, as "severely penal in its provisions;" that, "in fact, it was a barbarous act, unworthy of the age and country where it was found." (Per BROWN, J.: Curtis v. Leavitt,15 N Y, 151.) The case of The Dry Dock Bank was decided in December, 1849, and at the ensuing session of the legislature the act of April 6, 1850, *Page 277 
was passed. It is well known that it was called for by that case, and it was intended to prevent a repetition of a similar transaction. It is entitled "an act to prohibit corporations from interposing the defence of usury;" and the first section declares that "no corporation shall hereafter interpose the defence of usury in any action." The learned judge, whose opinion in the case of Curtis v. Leavitt I have already referred to, proceeds to show that the provisions of the statute in reference to usury in favor of the borrower are in the nature of penalties, imposed on the lender, for the infraction of the statute; as they unquestionably are. And he cites authorities to sustain the position that the effect of a repealing clause upon a previous statute, which imposes a penalty, takes away all right to the penalty. The judge proceeds to say: "The effect of the act of the 6th April, 1850, is to repeal the statute of usury, so far as it applies to corporations. The condition of this class of beings becomes the same as if the usury laws never existed. The title of the repealing act is significant. It is, `to prohibit corporations from interposing the defence of usury in any action.' The first section then declares, in a few short, emphatic words, that the defence of usury shall not thereafter be interposed. It is the defence which is prohibited. The barrier wall, the place of strength, which the usury laws set up between the lender and the borrower, is thrown down and leveled with the ground, whenever the borrower is a corporation. Henceforth, the law offers no rewards of bad faith and broken promises to this class of contractors. * * * The object of the act is to take away from corporate bodies the defence of usury — a defence which most men have come to regard as immoral, mischievous and unjust. It should have a liberal interpretation." COMSTOCK, J., at page 85, says: "I am inclined to think that the statute would be decisive against the right of the receiver to allege usury in any stage of these causes, either as a defence to the original bill or as a foundation for his cross bill. My impression is that the act must be construed as a repeal of the statute of usury as to all contracts of corporations stipulating to pay interest, thus leaving the contracts in full force according *Page 278 
to their terms." SHANKLAND, J., at page 174, says: "To interpose the defence means not only to plead it, and give evidence thereof, but also to use it at the trial as a defence. The inhibition extends to the entire series of acts which constitute the defence, and to each of them." PAIGE, J., at page 228, says: "The prohibition is, that no corporation shall, after the passage of the act, interpose the defence of usury in any action. This prohibition is not directed merely against pleading or proving the defence, but it is against interposing it, that is, either by plea or by proof, or by claiming the benefit of it at the trial or hearing. The statute was intended to embrace in the prohibition the setting up as a defence usurious agreements." At page 229 he says: "As soon as the statute imposing the penalty is repealed, the very foundation of the action to recover it is taken away, and the action must fall with the law. The act of 1850 is, in substance, a repeal of the statute of usury, so far as relates to corporations. * * * The prohibition applies not only to the corporation, but also to all who claim under or through it." SELDEN, J., at page 255, says the "intention obviously was to take away altogether from corporations the defence of usury. Proving usury upon the trial, setting it up at the hearing, is interposing it as a defence, no less than the pleading it." When we bear in mind the circumstances under which this act was passed, we cannot be at a loss for the meaning of the words used by the legislature. A corporation had set up, as a defence to a contract, or, in other words, the grounds upon which it was illegal, the privileges secured to them by the statute of usury. This had not been done, in the technical sense of a defence to an action, or setting up as a defence the statute of usury. But they had interposed the defence of usury to a claim against them, and on that ground had sought affirmative relief. It was the intent of the legislature to prohibit such an interposition, or taking advantage or benefit from the defence of usury. It is quite immaterial, when we look at the objects of the legislature, whether this claim by a corporation to avail itself of the statute be set up affirmatively or be interposed as a shield, when attacked by *Page 279 
the other party to the usurious contract. It was obviously the meaning and intent of the legislature to take away from corporations altogether all benefit or advantage resulting from the statute of usury. As to them, it was as though it never had existence as a law. It was not thereafter to be used or taken advantage of by them, either as a weapon of attack or as a shield for defence.
It is conceded by the learned counsel for the appellant that, if the defendants had prosecuted the bank for the moneys loaned it, they could have recovered the amount so loaned. The prohibition precluded the bank from setting up in defence, either by pleading or proof on the trial, that the loans were usurious. The defendants would then clearly have recovered. But, says the learned counsel, the statute gives to the bank the right to recover back the usurious interest paid, and it would follow, therefore, that the bank, in the suit against it to recover its loans, could have set up as a counterclaim the usurious interest paid, and claimed its deduction from the amount due the defendants. Is not this interposing the defence of usury to the plaintiff's demand? And it presents the anomaly of holding the same contract both legal and illegal, in uno flatu. It is legal to enable the lender to recover from the borrower, the corporation, the money loaned, and illegal to enable the defendant, the corporation, to recover from the plaintiff a penalty given by reason of such illegality. The same contract cannot thus be divided and held legal as to one party and illegal as to the other. It is either legal or illegal in toto; and as the statute makes it legal as to the lender, it cannot be made illegal to suit the purposes of the borrower. As was well said in the court below, "the money borrowed, the legal interest, and the usurious premium, are all mingled together in one transaction, form part of one single and indivisible contract; and when the statute says the defence of usury shall not be interposed to it, I think it means each and every part of it: no one part more than another."
The judgment of the Supreme Court should be affirmed, with costs. *Page 280