## JACOB R. FREESE ADS. J. BROWNELL ET AL.

1. A bill drawn in Illinois, and delivered to drawee in New York, is governed by the law of the latter place, but if in good faith it is made payable in the former state, any rate of interest, not exceeding that there allowed, may be reserved.
2. As to the acceptor, the place of payment, in the absence of other controlling circumstances, will be his place of residence or his address on the face of the bill, but the contract of the drawer is, that upon default of the acceptor and notice, he, the drawer, will pay where he drew the bill, and each endorser is liable according to the law of the place where he endorses.
3. By positive law, in New York, all corporations are debarred from setting up usury in the courts of that state.
4. The defence of usury being unavailing to the corporation, cannot be invoked by their surety.

On rule to show cause.

The issue, in this case was tried at the Mercer County Circuit, and a verdict rendered for the plaintiff. A rule to show cause why the verdict should not be set aside, and a new trial ordered, was allowed, and argued upon the facts stated in the opinion of the court.

Argued at June Term, 1871.

For the rule, *Richey & Emery.*

For the plaintiffs, *C. Parker.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The plaintiffs, bankers and brokers in New York, held a claim against the First National Bank of Decatur, Illinois, of which the defendant, a resident of Trenton, in this state, was a director.    Upon adjusting the amount due to the plaintiffs, the defendant, on the 3d of April, 1869, at Trenton, drew a draft for it upon the First National Bank of Decatur, at four months, and gave it to S. V. White, the plaintiffs' agent.    This draft being protested.for non-payment, the defendant, on the day it matured, (August 3d, 1869,) was at the bank in Decatur, and there drew another draft, of which the following is a copy:

"TRENTON, New Jersey, August 3d, 1869.
"Three months after date, pay to the order of J. L. Brownell & Brother, eight thousand three hundred and twenty dollars, value received, and charge the same to account of
"J. R. FREESE.
"To First National Bank of Decatur, Illinois."

This draft was at once accepted by the cashier of the bank of Decatur, and forwarded to New York to T. W. Freese, for the purpose of taking up the first draft, and was by him there delivered to White, the plaintiff's agent, August 30th, 1869.

In taking up the first draft in New York, interest on it at

the rate of ten per cent. per annum, was charged and paid to White at the time of renewal and surrender of the first draft, that being then the legal rate of interest in Illinois.

This suit is brought upon the draft of August 3d, 1869, against Freese, the drawer, who interposes the defence of usury.

The argument for defendant is that his liability must be determined by the laws of New York, where the bill was actually delivered to the plaintiffs, and not by the laws of Illinois, where it was drawn, accepted, and made payable.

It is well settled that, in contemplation of law, a bill is made where it first comes into legal existence, by being passed away.

" The *lex loci contractus* depends not upon the place where the note or bill is made, drawn, or dated, but upon the place where it is delivered from drawer to drawee, from promisor to payee, from endorser to endorsee. It has been frequently stated that a note is nothing until delivered." 2 *Parsons on Bills and Notes* 327 ; *Campbell* v. *Nichols*, 4 *Vroom* 81.

Although in legal effect, therefore, this contract, both as to drawer and acceptor, was made in New York, the interest to be paid on it is regulated by the law of the place where it was to be performed. *Story on Conflict of Laws*, § 291 ; *Taney, C. J.*, in *Andrews* v. *Pond*, 13 *Peters* 77.

The law presumes that the contracting parties knew the rate of interest at the place of performance, and that they intended that should regulate the transaction.

This rule is declared by the Chief Justice, in *Campbell* v. *Nichols*, 4 *Vroom* 81, to be now entirely indisputable, where the contract is made in one state, and the place of payment, in good faith, made in another.

The test, therefore, will be, in this contest, the place of payment; and in this respect there is a distinction between the place of performance by the acceptor and the place of performance by the drawer.

As to the acceptor, the rule is, that the place of payment, in the absence of other controlling circumstances, will be im-

plied to be his place of residence, or his address on the face of the bill.  2 *Story on Bills.*

This bill was drawn upon the First National Bank of Decatur, and, to hold the drawer, it was necessary to have presented it for payment at the counter of that bank, and therefore the legal rate of interest in Illinois could lawfully have been reserved upon it.

A different rule, as to the place of payment, applies to the drawer.  He does not stipulate that he will pay at the bank on which the bill is drawn, but that, if the acceptor does not pay at that place, he, the drawer, upon default and notice, will pay at the place where he drew the bill, which, in this case, was in the city of New York.

The contract of the drawer is governed by the law of the place where the bill is drawn, in regard to the payee and any subsequent holder, and not by the law of the place of payment by the acceptor.  2 *Story on Bills,* § 131 ; *Story on Conflict of Laws,* § 314.

The drawer is liable according to the law of the place where bill is drawn, and each successive endorser is liable according to the law of the place where he endorses—every endorsement being treated as a new substantive contract.. Cases in support of this rule are, *Potter* v. *Brown,* 5 *East* 124 ; *Powers* v. *Lynch,* 3 *Mass.* 77 ; *Hicks* v. *Brown,* 12 *Johns.* 142 ; *Prentiss* v. *Savage,* 13 *Mass.* 20.

In *Potter* v. *Brown,* the suit was against the drawer upon a bill drawn in America upon a person in England, and delivered in America.

After the bill was protested for non-acceptance, the drawer obtained a certificate of discharge under the bankrupt laws in America.   This discharge was held to be a bar to the action in England, because the promise of the drawer was to pay in America if the acceptor did not pay in England.

In *Powers* v. *Lynch,* 3 *Mass.* 77, Justice Sedgwick held " that the endorser contemplates performance as to himself, according to the law of the place where he makes the endorsement."

To the same effect are *Hicks* v. *Brown*, 12 *Johns.* 142, and *Prentiss* ?. *Savage*, 13 *Mass.* 20.

The authorities cited establish the proposition that in the negotiation between the bank, which was the acceptor, and the plaintiffs, any rate of interest not in excess of that allowed in the State of Illinois, might lawfully be contracted for, and that, therefore, there was no usury in the negotiation of this draft, between the plaintiffs and the party primarily liable for its payment.

This reduces the defendant to the position of seeking to set up usury in avoidance of a contract which, as between the parties who made it, is tainted by no such infirmity.

There was no usurious agreement made with the drawer; he stands only for the default of the acceptor in discharging his promise to pay, and he cannot escape the obligation he has assumed unless the transaction is charged with vice between the payee and acceptor.

The defendant, by his implied contract clearly defined in law, agreed, upon the contingency which has happened, to answer for the default of the acceptor in an undertaking which is, in all respects, valid. If the suit had been instituted against the bank in this state, the plaintiffs would have been entitled to recover, with ten per cent. interest; so that if the defence in this case is successful, the law would taint the instrument and destroy the security, because the payees have taken what, in our own courts, would be solemnly adjudged to them. If this defence could prevail, it would, in all cases, absolve from liability the endorser upon paper discounted at lawful rates by our banks, if the endorser resided and made his endorsement in a state where the legal rate of interest was less than that prescribed by our own laws.

There is no usury in the transaction, regarding it as a contract to be performed by the acceptor in the State of Illinois, and within the protection of the laws of that state.

The result will not be changed by treating it as wholly subject to the laws of New York. The usury laws of the

latter state, passed in 1850, provide that "no corporation shall interpose the defence of usury in any action."

The effect of this provision has been considered in the Court of Appeals of New York, in an able opinion by Judge Davis, in *Rose* v *Butterfield*, concurred in by all the judges, and reported in 33 *N. Y.* 665.

This case, which has since been accepted as authority in New York, establishes, upon what I conceive to be sound reasoning, the following propositions:

*First.* That all corporations, whether foreign or domestic, are debarred from setting up usury in the courts of New York, no matter where their contract is made, or by what *lex loci* it is to be governed.

*Secondly.* That the defence being unavailing to the corporation, cannot be invoked by their surety.

In my opinion, therefore, the defence fails, and the rule to show cause should be discharged.