## BRAMHALL v. ATLANTIC NATIONAL BANK.

1. Under the New York statute (*Laws*, 1850, *ch.* 172, *p.* 334,) and decisions thereon, a corporation, its endorsers, guarantors or sureties cannot avoid its contract on the ground of usury, whether by defence or affirmative action.

2. The object of that statute is to protect the special contracts of a corporation for a higher rate than seven per cent., and on all contracts not providing for a higher rate, interest is collected against a corporation at seven per cent. under the general act. (3d *Vol. Rev. Stat.*, N. Y., p. 72.)

3. The act of 1850 in that state, does not disturb the general rate of seven per cent., but in effect repeals all penalties against a higher rate as to corporations, rnd leaves parties at liberty to make a special contract with a corporation without limitation.

4. Under the act of congress (*Acts*, 1864, *p.* 108, § 30,) national banks may take any rate fixed by the laws of the state or territory where created, and in case no rate is fixed, the bank may charge any rate not exceeding seven per cent. Had the rate in New York been ten per cent., the bank could have taken it, and so when the rate is seven per cent. the bank takes it, not because that is the rate by act of congress, but because it is so by the New York statute.

5. The penal clause in the 30th section of said act of congress, viz.: "And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid, shall be 'held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon, &c.," is not limited to cases where the bank is authorized to charge seven per cent. under the act of congress, but applies, also, where a rate is fixed by the state law, *and no penalty provided by that law for exceeding it.*

6. On a loan to a corporation exceeding the New York rate, a national bank in that state would be liable to forfeit the interest or amount agreed to be paid thereon if *knowingly* taken, received, reserved or charged by the bank.

7. The case of the National Bank of Whitehall *v.* Lamb et al., decided December, 1872, is only an adjudication in effect, that where a penalty is provided by a state law, a national bank is liable to' it for usury.

8. The officers of the bank supposed that they were buying the note of the endorsers and not of the corporation maker, and for that reason the bank was not held liable to a forfeiture for *knowingly* charging usurious interest; but inasmuch as the note was not obtained by the defendants for value, and they were in fact accommodation endorsers or sureties for the corporation, the recovery by the bank can only be for the amount paid, with legal interest.

On rule to show cause why the verdict should not be set aside, &c.

Argued at February Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and DEPUE.

For the defendant, *A. T. McGill, Jr.*, and *R. Gilchrist,* Attorney-General.

For the plaintiffs, *J. Flemming* and *Mr. Capwell*, of New York.

The opinion of the court was delivered by

BEDLE, J. This suit is founded upon two promissory notes, for $2954.74, each; one made by the defendant and endorsed by George F. Steinbrenner, the other made by Steinbrenner and endorsed by the defendant. Both notes are held by the plaintiffs. These notes were given for a note made by the New York and Silver Peak Mining Company, for $5714.29, and payable to the order of Bramhall and Steinbrenner, six months after the date thereof, with interest at the rate of seven per cent. which note was endorsed by Bramhall and Steinbrenner to the Atlantic National Bank, the bank paying therefor $5000, and which note, when due, was protested for non-payment.

The defence at the trial was that this negotiation by the bank was virtually a loan to the mining company, and that it was usurious.

The mining company was a corporation organized under the laws of the State of New York, and all of the notes were drawn and made payable in that state. The ordinary rate of interest in New York is seven per cent., and the penalty for taking a greater rate is a forfeiture of the claim. *Rev. Stat., N. Y., Vol. III, p.* 72. Such was the law, without any exception, until in 1850 the legislature passed an act that " no corporation shall hereafter interpose the defence of usury in any action." *Laws,* 1850, *ch.* 172, *p.* 334. This provision under the New York decisions prevents a corporation, its endorsers, guarantors, or sureties from avoiding *its* contract on the ground of usury, whether technically by defence or affirmative action. *Rosa* v. *Butterfield,* 33 *N. Y.* 665 ; *Butterworth* v. *O'Brien,* 23 *Ib.* 275 ; *Belmont Bank* v. *Hoge,* 35 *Ib.* 69 ; *Southern L. I. & T. Co.* v. *Packer,* 17 *Ib.* 51 ; *Curtis* v. *Leavitt,* 15 *Ib.* 9 ; *Merch'ts Ex. N. B'k* v. *Warehouse Co.,* 49 *Ib.* 641.

If the case therefore rested entirely upon the New York law, the defence of usury could clearly not be maintained. But it is urged by the defendant that inasmuch as there is no statute in New York limiting the rate of interest that a corporation may contract to pay, that the act of congress in regard to national banks becomes applicable, limiting the interest to seven per cent., and forfeiting the entire interest or whatever is agreed to be paid, if more than seven per cent. is *knowingly* taken, reserved, or charged. *Acts,* 1864, *p.* 108, § 30.

In some of the New York cases referred to there are expressions to the effect that the usury laws, so far as applicable to corporations, are repealed by the act of 1850, but in the case of the *Merchants Ex. N. Bank* v. *Warehouse Co.,* 49 *N. Y.* 641, Folger, J., says : " But the force of the reasoning in them as a whole, and the bearing of the facts therein, are to the result that the purpose of the act was to prevent the avoidance by a corporation of its own contract, for the reason that it was made in contravention of the laws against usury." The contracts intended to be protected were undoubtedly

special and it cannot be held, and has not been in New York, that the general rate of seven per cent. has been abrogated, so far as the right to take it against a corporation is concerned, in the absence of any agreement as to the interest. It is clear that under the New York statute seven per cent. could be collected against a corporation on all contracts not providing for the interest. (3d Vol. Rev. Stat. N. Y., p. 72.) In that respect the act of 1850 does not disturb the general rate of seven per cent., but in effect repeals all penalties against a higher rate and thereby leaves parties at liberty to make a special contract with a corporation without limitation. It does not, however, follow from that, that the rate fixed by act of congress is to control the contract in question although the per cent. is the same. The act of congress provides in substance that every association may take, receive, reserve, and charge on any loan or note, &c., interest at the rate allowed by the laws of the state or territory where the bank is located, and no more except, &c., and "when no rate is fixed by the laws of the state or territory, the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, &c." The plain purpose of this provision is to allow the bank to charge any rate fixed by the laws of the state or territory where located, and in case no rate was fixed to provide that the interest should not exceed seven per cent.

In New York, as already stated, there is a general rate, and applying to corporations alike with others, except only where special contracts otherwise are made with corporations. This must undoubtedly be the meaning of the legislation of that state and of their adjudications. Under this view the rate fixed by the state law would control the loans of the bank without any power to make contracts exceeding it with corporations. Had the rate in New York been ten per cent., I have no doubt that, under the act of congress, the bank could have taken it. And so when the rate is seven per cent., the same as that mentioned in the act of congress, the bank could take it, not by virtue of such act, but by the statute of New York.

But in the case before us, the amount reserved by the bank exceeded seven per cent., and the question arises, if the payment by the bank is to be regarded as a loan to the mining company, whether there is any forfeiture by reason thereof. It was held by the Court of Appeals of New York, in 1872, in the case of *The National Bank of White-hall* v. *Lamb et al.*, 50 *N. Y.* 95, that a national bank was subject to the penalties, for usury, of the state laws, and not of the act of congress in states having usury laws; and one of the grounds of the reasoning of the court is, that the following clause in the thirtieth section of the act of congress, in the paragraph succeeding that already recited, " and the knowingly taking, receiving, reserving, or charging *a rate of interest greater than aforesaid*, shall be held and adjudged a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon, &c.," refers only to the clause immediately preceding, and limits that penalty to cases where the bank is authorized to charge seven per cent. by the act of congress, and which is only in states or territories having no usury laws, or in other words, that the language, " *a rate of interest greater than aforesaid*," refers only to the words in the preceding clause, " *a rate not exceeding seven per centum*," and the consequent argument being, that in New York, where a rate was fixed, the penalty of the act of congress was not intended to apply, but that the bank was left subject to the penalties of the usury laws of the state. In this same case, in 57 *Barbour* 429, and which was appealed as stated, the Supreme Court held that the penal clause referred to applied to national banks in New York, and that they were not subject to the penalties of the state law. That was a case between a national bank and individuals. Whether the court, had the defendant been a corporation, would have carried out the same line of argument, and left a national bank not liable to any penalty, because none was provided by the state law, and because the penalty of the act of congress did not apply, it is difficult to tell. At any rate, that construc-

tion of a law of congress is not necessarily binding upon us, even in a New York transaction; and, apart from that, the case, as an adjudication, does not extend beyond this, that where a penalty is provided by a state law, a national bank is liable to it for usury. But notwithstanding the reasoning referred to, which is entitled to great respect as coming from an able judge, and a court of undoubted learning, I am constrained to hold that the rate of interest referred to in the penal clause of section thirty, refers to any rate that the bank is authorized to take by either of the preceding paragraphs. Such, I think, is the natural reading of the section. Under this view, the penal clause would certainly apply to this case, where a rate was fixed by the state law, and no penalty provided in that law for exceeding it. Whether the penal clause referred to is constitutional or not, so far as it is in conflict with the penal provisions of state laws, need not now be determined. That question was largely discussed in The Bank of Whitehall v. Lamb et al. It is sufficient to say, that there is no conflict on the point under consideration.

The result is, that on a loan exceeding the New York rate, The Atlantic National Bank would be liable to forfeit the interest or amount agreed to be paid thereon, if knowingly taken, received, reserved, or charged by the bank.

This conclusion is substantially in accordance with the charge.

The question then arises, whether the evidence would justify the verdict that the bank knowingly charged a greater rate of interest than the New York rate? It is claimed by the bank, that this transaction, so far as its officers were concerned, was not a loan to the mining company, but that the money was paid for the purchase, from Bramhall and Steinbrenner, of the mining company's note. In other words, that it was a sale of the note to the bank. The defendant insists that he and Steinbrenner were simply accommodation endorsers for the mining company, and that the bank negotiated the note for the company, on condition that they would endorse it.

That note was one of a series of notes, amounting to about $33,000, ordered issued by the mining company, most of which were discounted or purchased by the trustees and stockholders of the company, at a discount of twelve and a half per cent.

The insistment of the bank is, that this note of $5714.29 was actually purchased by Bramhall and Steinbrenner, of the company, they being stockholders, and Bramhall a trustee, at the discount stated, and after that, that it was negotiated by them to the bank.

Assuming that the weight of evidence is against the fact of the purchase by Bramhall and Steinbrenner, there was evidence from which the jury could find that the officers of the bank did not suppose that they were negotiating the note for the company, and thereby making a loan, but supposed, in fact, that they were buying the note of Bramhall and Steinbrenner, and that they (Bramhall and Steinbrenner) had negotiated it with the company.

The court, therefore, are not disposed to disturb the verdict upon the ground that the bank knowingly charged a usurious interest. In this connection, an exception may be noted to a refusal to charge the jury as requested by the defendant, " that if they believe that the note of the mining company was never delivered to Bramhall and Steinbrenner, and that they had never paid anything for it, but that they endorsed it as accommodation endorsers, that it was negotiated for the first time, and if more than seven per cent. was paid it was usurious." This refusal to charge was not an error, for if the facts were found by the jury, as requested, another element would still be wanting, and that was a knowledge of the facts by the plaintiff.

But notwithstanding all this, the question is still important whether the note had been actually negotiated by Bramhall and Steinbrenner of the mining company, for if not, and they were mere accommodation endorsers, the bank would be, in legal effect, making a loan to the company at a rate higher than authorized ; the consequence of which would be, not

that the bank would be liable to a forfeiture, if not knowingly doing it, but that the bank would be prevented from recovering more than the legal rate of interest for the money actually paid.

The weight of evidence on this subject is, that the note was not, in fact, obtained by Bramhall and Steinbrenner for value, but that they were really accommodation endorsers or sureties. Under these circumstances, the bank is not entitled to recover more than the actual amount paid, with legal interest. The act of congress does not prevent that, where the excess of proper interest was not knowingly reserved. And if, in point of fact, it was not a sale to the bank by reason of Bramhall and Steinbrenner being accommodation endorsers, and no fraud on the part of Bramhall and Steinbrenner, so as to estop them from setting up that it was not such a sale, then there is no reason why the bank should not be reimbursed for the amount paid, together with such interest as it could legally take. The verdict was for the full amount of the two notes, with interest. These notes include an excess of principal over the $5000 paid by the bank. The verdict, so far as it exceeded $5000, and interest at seven per cent. from April 3d, 1869, when the first note was obtained by the bank, is erroneous. If the bank will reduce the verdict to the proper amount indicated during the term, the verdict may stand, otherwise a new trial will be ordered. $5000 having been paid as a condition on which this rule was granted, the new trial if had, will be limited to the excess of the claim of the bank over the $5000 already paid.