CHARLES H. J. DILG, Plaintiff, *v.* THE BANK OF UNITED STATES, Defendant.

First Department, April 12, 1935.

*Irving S. Freedman* of counsel [*Otto C. Sommerich* with him on the brief; *Katz & Sommerich*, attorneys], for the plaintiff.

*Henry L. Bayles* of counsel [*Edward Feldman* and *Warren C. Fielding* with him on the brief; *Carl J. Austrian*, attorney], for the defendant.

GLENNON, J. This is a submission of a controversy upon an agreed statement of facts.

The following questions are presented by the stipulation:

" 1. Under Section 114 of the Banking Law and Section 374 of the General Business Law, is the defendant Bank liable to the plaintiff herein for knowingly taking, receiving or reserving from

the Amcarnita Holding Corporation, or charging the said corporation upon the said note a rate of interest greater than 6% per annum?

" 2. If so, is the plaintiff entitled to recover:

" (a) Twice the amount of all the interest taken on the note, to wit, twice $798.61, or

" (b) Twice the amount of the interest taken in excess of interest at the rate of 6%, to wit, twice $242.78.

" 3. If the plaintiff is entitled to any recovery should he be allowed:

" (a) Interest from the time of payment of the principal and interest on the said note, to wit, August 5, 1929.

" (b) Interest from the time of commencement of suit, to wit, July 14, 1931, or

" (c) No interest at all."

The record discloses, among other facts, that the defendant bank, on or about July 15, 1929, discounted a note of the Amcarnita Holding Corporation, plaintiff's assignor, in the sum of $115,000 payable in one month, and " knowingly took, received, reserved and charged " the corporation interest in advance at the rate of six per cent, amounting to $555.83. Thereafter, on the 5th day of August, 1929, the bank received payment in full of the note at which time it " knowingly took, received, reserved and charged " the corporation the sum of $242.78 as additional interest for the period during which the note was outstanding. In other words, it is conceded that the total interest paid by plaintiff's assignor on the loan amounted to $798.61, and that the interest in excess of six per cent charged on the loan amounted to $242.78.

Defendant contends that section 114 of the Banking Law does not give to a corporation the right to recover any excess interest, which it may have paid. Plaintiff asserts that it does. It must be conceded, of course, that the claim in suit is predicated solely upon any possible right which the corporation had to recover, at the time it executed and delivered the assignment.

In the early history of this State statutes were enacted limiting the rates of interest and imposing penalties and forfeitures for the acceptance of a sum greater than the law permitted. These statutes applied not only to individuals but also to corporations.

A law was passed in 1850* which provided in part as follows: " No corporation shall hereafter interpose the defense of usury in any action." Subsequently, this provision was written into section 374 of the General Business Law. It provides: " No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed

_____

* Laws of 1850, chap. 172.— [REP.

to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships."

The result of this particular legislation was to restore to a lender the common-law right to collect from a corporation what otherwise would be regarded as an usurious rate of interest if an individual, rather than a corporation, had paid or promised it. The effect was well expressed in *Butterworth* v. *O'Brien* (23 N. Y. 275), where Judge DAVIES said: "The barrier wall, the place of strength, which the usury laws set up between the lender and the borrower, is thrown down and leveled with the ground, whenever the borrower is a corporation. Henceforth, the law offers no rewards of bad faith and broken promises to this class of contractors. * * * The object of the act is to take away from corporate bodies the defence of usury — a defence which most men have come to regard as immoral, mischievous and unjust."

After the act of 1850 became part of our law, it was maintained by some that corporations were prohibited merely from setting up usury as a defense or as a shield, but that contention was overruled. In *Rosa* v. *Butterfield* (33 N. Y. 665) Judge DAVIS said: "The language of the section speaks only of the interposition of usury as a defense to an action. In strictness this would leave the corporation free to use any offensive remedy which the law recognizes. For instance, to file its bill in equity to cancel the usurious agreement, and regain possession of any securities it had given; or to bring suit to recover back the usurious premiums it had paid; or to sue in trover for property or securities deposited as collaterals. But such a construction would defeat all the beneficial aims of the act, and usury would only cease to be a shield, to become the more obnoxious as a sword. The corporation forbidden to use it as a defendant, by instituting a suit as plaintiff, could under the former statute annul or wrest from the holder the very contract against which it could make no defense. Hence the courts were constrained to hold that since the enactment of this law, no corporation can maintain an action to invalidate its contracts on the basis of usury. [*Butterworth* v. *O'Brien*, 28 Barb. 187; *Hungerford's Bank* v. *Dodge*, per ALLEN, J., 30 id. 629; *Southern Life Ins. & Trust Co.* v. *Packer*, 17 N. Y. 51.]"

Individuals were not prevented from setting up a defense of usury, nor from avoiding the entire debt. Banks frequently lost principal and interest where it developed that the transaction was tainted with usury. To safeguard National banks against the

loss of principal, in 1864 Congress enacted statutes* which, in substance, provided that, if a National bank charged a rate of interest greater than permitted by law, there was to be no forfeiture of the loan or debt, and the only penalty was to be a forfeiture of the interest if not paid, or if paid, a recovery of twice the amount of interest could be had, provided an action was commenced within two years.

By chapter 163 of the Laws of 1870 the Legislature of this State, mindful of the situation, in so far as it pertained to State banks, wrote into our law, with slight variations, what is now known as section 114 of the Banking Law. It reads in part as follows: " Every bank * * * may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum * * *. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill of exchange or other evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover twice the entire amount of the interest thus paid from the bank or banker or investment company taking or receiving the same, * * *. The true intent and meaning of this section is to place and continue such banks and bankers and investment companies on an equality in the particulars herein referred to with the national banks organized under the act of congress entitled ' An act to provide a national currency, secured by pledges of United States bonds, and to provide for the circulation and redemption thereof,' approved June the third, eighteen hundred and sixty-four."

It is argued by the plaintiff that the provisions of section 374 of the General Business Law removing corporations from the operation of the usury statutes were impliedly repealed by section 114 of the Banking Law, so that corporations as well as individuals may exact the penalty provided for in section 114.

We are of the opinion that plaintiff's claim is not well founded. In a period of upwards of sixty years no corporation, in so far as we have been able to determine, has been permitted to take advantage of the provisions of section 114 of the Banking Law.

Since 1850 the general policy of this State has been to prevent corporations from using the usury law either as a weapon or a shield. If the Legislature in enacting section 114 of the Banking Law had intended to grant to a corporation the right to recover excess interest, it could have said so in language concerning which

---

* 13 U. S. Stat. at Large, p. 108.— [REP.

there could be no doubt. The statute was enacted to protect the individual, as distinguished from a corporation, in his dealings with banks. The words used are: " the person paying the same or *his* legal representatives may recover twice the entire amount of the interest thus paid." While a " corporation " may properly be regarded as a " person," still, the word is not used in that sense in this particular section. It will be noted that the right accrues to a " person " or " *his* legal representatives." The failure to include any reference to " *its* successors or assigns " is significant and indicates a differentiation between a natural person and a corporate entity.

In determining the questions presented for our consideration we are concerned only with the law of our State in so far as it should be applied to a controversy pertaining to rates of interest between a State bank and a corporation. The interpretation of similar statutes by the courts of other States while enlightening, is not controlling.

The problem now before us was squarely presented in *Bank of America* v. *Tierney Sons, Inc.* (252 N. Y. 584). (See case and points, particularly respondent's point I and appellant's reply brief, point I.) There the Court of Appeals, by its unanimous affirmance, rejected the argument advanced by the appellant that section 114 of the Banking Law necessarily superseded section 374 of the General Business Law with reference to loans made to corporations by banks or investment companies.

The first question should be answered in the negative. It is unnecessary to consider the remaining questions.

Accordingly, judgment should be rendered in favor of the defendant, without costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment directed in favor of the defendant, without costs. Settle order on notice.