William R. Brennan, Jr., J.
Both sides move for summary judgment in this action brought to recover $51,000 under the provisions of section 380-e of the Banking Law. That is a recent addition made by chapter 963 of the Laws of 1960, effective April 28,1960. It is entitled “ Effect of usury ” and reads in part: ‘1 The knowingly taking, receiving, reserving, or charging by a savings and loan association of interest at a rate greater than six per centum per annum, or in excess of such greater rate of interest as may be authorized by law, shall be held and adjudged a forfeiture of the entire interest * * *. If such greater rate of interest has been paid, the person paying the same or his legal representatives may recover from the savings and loan association twice the entire amount of the interest thus paid.”
The rights of the parties depend upon the application of the statute to the following facts.
On June 26, 1959, Candía Realty Corp. (“ Candía ”), a New York corporation, acquired title to a substantial tract of land and gave a purchase-money mortgage. On the same day it conveyed the property to Peninsula Shopping Center (“ Peninsula ”), a partnership composed of the plaintiffs herein. Thereafter, a building loan was negotiated with Franklin National Bank (“ Franklin ”) and on March 7,1960, Peninsula conveyed to Candía which executed a mortgage to Franklin on the following day. Candía then reconveyed to Peninsula.
Refinancing of this mortgage was sought and on August 18, 1960, the defendant issued its commitment letter addressed to one Roach approving a first mortgage loan of $850,000 bearing 6% interest subject to certain conditions including a “ Note to be signed by the Corporation and all principals ’ ’. The commitment letter provided for loan charges of $25,500 (which amount is exactly Zfo of the face amount of the proposed loan), plus appraisal fees, attorneys’ fees, title insurance costs, survey, mortgage tax and recording fees.
On September 7 a formal application for the loan was submitted by Candía shovnng the plaintiffs as “ principals ” of the corporation and on September 13 financial statements were *331 certified for Candía reflecting its financial condition on September 1. On September 26 a request was also made for financial statements of Peninsula and of each of the partners, the plaintiffs herein.
Closing took place on September 30, 1960 when $850,000, the amount of the loan, was paid by three checks bearing the indorsed approval of Candía. One was to the order of Franklin, one to the order of defendant for $25,500, payment of which has led to this litigation, and the third for $1,000 to the order of the attorneys for the defendant for their legal services. The balance of $220,500 was paid by defendant to Candía by direct check to its order. In addition, closing fees and charges for title insurance, survey, etc., aggregating $2,650.80 were paid.
The closing instruments included a mortgage for $247,000 made by Candía to defendant, a stockholders’ certificate and consent executed by the plaintiffs as owners of all of the issued and outstanding shares of Candía, a mortgage note for $247,000 and a consolidation and extension agreement whereby the aforesaid mortgage was consolidated with a mortgage having a balance of $603,000 taken by assignment from Franklin. The mortgage note and the consolidation and extension agreement were made by Candía and the two plaintiffs individually. In the agreement the three signatories are designated 1 ‘ the party of the first part”. At the same time a deed from Peninsula to Candía was delivered. Plaintiffs assert that the title closer who received such of the closing documents as required recording, including the Peninsula to Candía deed, also received a deed from Candía to Peninsula to be recorded, but there is neither claim nor evidence that the defendant had any interest in this transaction.
It is apparent from the papers and the history of the several transactions that Candía has been in and out of title in connection with each mortgage transaction affecting the premises to suit the convenience of the plaintiffs. The plaintiffs assert, however, that insofar as the transaction with the defendant was concerned, this was done to sustain the charge of $25,500 which they refer to as a bonus and that the loan was actually made to them. They further contend that even if the charge may be sustained as against the corporation they, being comakers and cosignatories of both the mortgage note and the consolidation and extension agreement, may invoke the statutory penalty of twice the amount of the asserted bonus.
The defendant admits taking $25,500 at the closing but says the charge was proper because the refinancing constituted a specialty loan on business property, it served to pay off an *332 existing indebtedness with a discount not otherwise available, a favorable prepayment clause was given, the refinancing was closed speedily, and the amount helped defray the estimated cost of placing the loan on the books. Expert opinion evidence is submitted to show that the placing of similar mortgages normally involves a 4% to 7% discount.
None of these reasons advanced by the institution would be sufficient to defeat a claim of usury if the loan were in fact made to an individual. The mortgage carried an interest rate of 6%, and the 3% bonus, having been taken not as part of but in addition to the normal closing charges, must be included in the computation of the interest rate. (See Matter of Prince [New York Credit Men’s Assn. v. Schnur], 89 F. 2d 681, 682.)
As the court noted in Union Dime Sav. Inst. v. Wilmot (94 N. Y. 221, 227): “ the parties had a perfect right to deal with each other with the usury laws before their eyes, and to so shape the transaction as to avoid the condemnation of those laws.”
The only substantial question presented here is whether the parties did in fact so shape the transaction. It is fundamental that a corporation used for the sole purpose of borrowing money at a rate of interest which would be usurious if an individual were the borrower is nevertheless prohibited from raising the defense of usury, as is the beneficial owner of all the stock of the corporation. (Jenkins v. Moyse, 254 N. Y. 319; New York Credit Men’s Assn. v. Manufacturers Discount Corp., 298 N. Y. 512; Werger v. Haines Corp., 302 N. Y. 930.) That is apparently what the parties intended to do here; to use the corporation to borrow the money and to pay the bonus. But that was not the entire “ shape ” or form of the transaction. Although the corporation alone owned the property and executed the mortgage, the individuals and the corporation together executed the note and the extension agreement. If the effect of this was merely that the individuals were guarantors or sureties of the fundamental debt of the corporation, then such individuals are likewise prohibited from raising the defense or recovering the penalty, for they stand in no better position than the corporation whose debt they have guaranteed. (General Phoenix Corp. v. Cabot, 300 N. Y. 87; Salvin v. Myles Realty Co., 227 N. Y. 51.) If, on the other hand, the effect was that the individuals were actually principal obligors, as distinguished from accommodation comakers whose rights would be gauged by the same rules as those governing guarantors, then the defense of usury would be available to them. (Pink v. Kaplan, Inc., 252 App. Div. 490; Astra Pictures v. Schapiro, 182 Misc. 19; Rockmore v. Epstein, *333 127 Misc. 526; Cabrera v. Olsen, 165 Misc. 374.) Such a determination involves factual issues which would preclude the granting of summary judgment to either side. A trial would be necessary to determine the exact status of the parties, and parol evidence would be admissible to the extent indicated in the Pink case.
We are not here dealing with the defense of usury, however, but with an action seeking the affirmative recovery of the penalty provided by section 380-e of the Banking Law. This section was added by chapter 963 of the Laws of 1960, effective April 28, 1960. Its purpose was to make certain that the consequences of taking excessive interest by savings and loan associations were the same as those provided by the Banking Law for banks and trust companies, private bankers, credit unions and investment companies. (N. Y. Legis Doc., 1960, No. 65[B]; Banking Law, § 108, subd. 6; § 173, subd. 1; § 293-a, subd. 1; § 453, subd. 5, [par. b]; § 510-a, subd. 1.) Thus the history of the commercial bank statutes is pertinent.
The statutes closely parallel the Federal statute (U. S. Code, tit. 12, § 86) and have comparable purposes. Briefly, “ To safeguard National banks against the loss of principal, in 1864 Congress enacted statutes which, in substance, provided that, if a National bank charged a rate of interest greater than permitted by law, there was to be no forfeiture of the loan or debt, and the only penalty was to be a forfeiture of the interest if not paid, or if paid, a recovery of twice the amount of interest could be had, provided an action was commenced within two years.” (Dilg v. Bank of United States, 244 App. Div. 223, 225, 226.) The court continues at page 226: “ By chapter 163 of the Laws of 1870 the Legislature of this State, mindful of the situation, in so far as it pertained to State banks, wrote into our law, with slight variations, what is now known as section 114 [§ 108] of the Banking Law. It reads in part as follows: ‘ Every bank * * * may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum * * *. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill of exchange or other evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover twice the entire amount of the interest thus paid from the bank or banker or investment company taking or receiving the same, * * e. The true intent and meaning of this *334 section is to place and continue such hanks and hankers and investment companies on an equality in the particulars herein referred to with the national banks organized under the act of congress entitled “An act to provide a national currency, secured by pledges of United States bonds, and to provide for the circulation and redemption thereof,” approved June the third, eighteen hundred and sixty-four. ’ ”
In construing the Banking Act of 1870, which, as above noted, contained the statute which was the forerunner of the penalty section here involved, the Court of Appeals said: “ In order to maintain this action it was necessary for the plaintiff to establish, not only that a greater rate of interest than seven per cent had been charged by the defendants on the discounts set forth in the complaint, but that such interest had been paid by him.” (Nash v. White’s Bank of Buffalo, 68 N. Y. 396, 398; emphasis supplied.) And in construing the National Banking Law provision upon which our State statutes are based, it has been held “ a forfeiture under its provisions should not be declared, unless the facts upon which it must rest are clearly established” (Wheeler v. National Bank, 96 U. S. 268, 270). It follows from this and it has been uniformly held that a joint maker of a usurious note cannot recover the penalty where another maker paid the illegal interest. (First Nat. Bank of Concordia v. Rowley, 52 Kan. 394; Teague v. First Nat. Bank of Salina, 5 Kan. App. 300; Timberlake v. First Nat. Bank, 43 F. 231.)
In the ease at bar, Candía, the corporate maker, paid the bonus. The payment took the form of a check issued by the defendant to its own order, upon which payment was approved by Candía, and which did not bear the signatures or approval of either of the individual plaintiffs. Plaintiffs, therefore, not having paid the bonus, are unable in this action to recover the statutory penalty.
Plaintiffs’ motion for summary judgment is accordingly denied and defendant’s cross motion for summary judgment is granted.