TWENTIETH CENTURY ASSOCIATES, INC., Plaintiff, v. ADOLPH WALDMAN, Doing Business under the Name of THE ARDMORE MANUFACTURING COMPANY, Defendant.*

Municipal Court of the City of New York, Borough of Manhattan, February 15, 1945.

* See, also, A. B. Madison Ave. Corp. v. Cohn, 183 Misc. 1061; Cohen v. Reckseit, 184 Misc. 107; Rosen v. 370 West 35th St. Corp., 184 Misc. 172; Sissias v. Perlmutter, 184 Misc. 174; Schwartz v. Church & Commerce Corp., 184 Misc. 200; Matter of Central Sav. Bank in City of N. Y. v. Logan, 184 Misc. 203.— [REP.

*Glekel & Drimmer* for plaintiff.

*Jack Gross* for defendant.

*Marvin L. Lothstein* for Citizens Committee, *amicus curiæ.*

MATTEO, J. Pursuant to rule 112 of the Rules of Civil Practice the plaintiff moves for judgment on the pleadings or in the alternative to strike out the affirmative defense côntained in defendant's answer.

The facts are undisputed. It appears that prior to and on March 1, 1943, the defendant, a tenant, occupied space used for commercial purposes in premises 335 West 35th Street, New York City, and paid a monthly rental of $75. On November 28, 1944, a renewal lease was entered into for this space which increased the monthly rental to $133.34 commencing February 1, 1945.

On February 1, 1945, the defendant tendered to the plaintiff the sum of $86.25 being the monthly rent computed on the basis of the formula prescribed by chapter 3 of the Laws of 1945 which went into effect on January 24, 1945, and known as the " Commercial Rent Law ". The rent was tendered by the defendant to the plaintiff amounting to the sum of $86.25 and represents the additional 15% of $75, that being the amount of the monthly rental on March 1, 1943. Plaintiff refused to accept this sum and thereupon this action was instituted.

The parties submitted to this court for determination the constitutionality of the Commercial Rent Law. The plaintiff contends that the act violates the due process, equal protection and commerce clauses of the Constitution of the United States. Defendant argues that the act is constitutional and a proper exercise of the police powers of the State.

Public hearings were had before the legislative committee at which time the contentions now urged by the plaintiff were pressed upon the Legislature. The legislative declaration that " a public emergency exists " and " Unjust, unreasonable and oppressive leases and agreements for the payment of rent for commercial space * * * whereby a breakdown has taken place in * * * bargaining and freedom of contract has become * * * illusory " thus " threatening to obstruct war production and the production of and distribution of

essential civilian commodities, and to cause inflation'' which threatens to impede the '' successful prosecution of the war and essential civilian activities, and to the public safety, health, and general welfare of the people '' must be held to be paramount to the property rights of individuals.

The Legislature likewise declared in enacting this measure into law that the purpose of the act was '' designed to protect and promote the public health, safety and general welfare, to aid the successful prosecution of the war, and essential civilian activities, and to prevent inflation, and is made necessary by an existing public emergency.''

Commercial space to earn a livelihood is a necessity of life. It is just 'as essential to the well-being of the citizens of this State as is dwelling space. The argument that the Legislature cannot use its police power to regulate this essential sphere of necessary activity is specious. Certainly the '' abnormal conditions incident to a war economy or resulting from other causes might still constitute a threat ' to the welfare, comfort and safety of the people of the state ' and might call for the exercise of the legislative power to provide an extraordinary remedy for extraordinary conditions '' (*East New York Sav. Bank* v. *Hahn,* 293 N. Y. 622, 628) are present in this particular field of endeavor and the Legislature has so found when it enacted the Commercial Rent Law.

The argument that the act violates the Constitution is likewise untenable. The Legislature in the New York Milk Control Act (L. 1933, ch. 158) provided for the mandatory payment of the minimum price for milk. This statute was attacked upon the ground that it violated the due process clause (U. S. Const., 14th Amendt., § 1). It was sustained because it was found that there was danger that the free operation of the law of supply and demand would not permit and allow the dairymen to provide sanitary safeguards essential for the health of the general public. (*Nebbia* v. *New York,* 291 U. S. 502.)

The Legislature has found, and we can easily perceive, that if no limitation was fixed upon the rent of commercial space a complete breakdown would come about as a result of which many important and vital aspects which deal directly with the war effort and our State economy would be disrupted and cause untold chaos and misery. Again, without such a limitation a vital industry dealing directly with our war effort would be compelled to vacate space occupied by it where another person or firm could pay a higher rental to the landlord which would in nowise benefit the war effort or essential civilian purposes.

An analogy may be clearly drawn between the Commercial Rent Law and the Mortgage Moratorium Acts. These acts have since been held to be valid because of the direct and immediate threat to the health and general welfare of the people, many of whom were threatened with the loss of their homes and businesses by foreclosure without opportunity, which would ordinarily exist under normal conditions, to refinance maturing mortgages. (*Gelfert* v. *National City Bank*, 313 U. S. 221; *Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398.)

There is no question in my mind that the legislation clearly and directly affects health and safety, inasmuch as it assures the continuance of proper space to manufacture articles which are necessary to the successful prosecution of the war and essential civilian purposes. This certainly is a proper exercise of the police power of the State. (*Home Bldg. & L. Assn.* v. *Blaisdell, supra.*)

Legislation which tends to promote the general welfare of the people has been expressly decided to be within the scope of the State police power.

In *Barbier* v. *Connolly* (113 U. S. 27, 31) the United States Supreme Court held: '' But neither the amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity.''

It has been held that the State can regulate any '' trade, calling or occupation * * * if ' the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the legislature can properly protect them.' '' (*Biddles, Inc.,* v. *Enright,* 239 N. Y. 354, 363.)

In *People* v. *Arlen Service Stations* (284 N. Y. 340, 343) the Court of Appeals held: '' In our present inquiry, however, we may not give weight to the fact that fraud was neither charged nor proved against the defendant. A business, however honest in itself, may be the subject of governmental regulation if it may become a medium of fraud. ' It is not enough to say that the business may be honestly conducted.' (*People* v. *Beakes Dairy Co.,* 222 N. Y. 416, 427.) Nor may we extend the field of our judicial inquiry into the realm of expediency where legislative judgment alone dictates the necessity for statutory regulation and its wisdom.''

And further, in the same case, the court also stated: "Nor can we say upon the present record that the defendant has been deprived of the equal protection of the laws. There is no proof of discrimination or of arbitrary action. The local law affects alike all in a given class — the retail dealers in motor fuel — and calls for the uniform enforcement of the act itself." And in *People ex rel. Durham R. Corp.* v. *La Fetra* (230 N. Y. 429, 448) this court declared: "The rule alike for state or nation is that private contract rights must yield to the public welfare, when the latter is appropriately declared and defined and the two conflict."

The statute in question, therefore, relating directly and appropriately to the object sought to be attained, is not unreasonable in its requirements. "The guarantee of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have real and substantial relation to the object sought to be attained" (*Nebbia* v. *New York*, 291 U. S. 502, 525).

The Emergency Rent Laws of 1920 were all upheld as being constitutional although they were attacked upon the very same grounds as is urged upon the court in the instant case. (See *People ex rel. Durham* v. *La Fetra*, 230 N. Y. 429, *supra*, affd. in principle 257 U. S. 665; *Levy Leasing Co.* v. *Siegel*, 230 N. Y. 634, affd. 258 U. S. 242; *Clemilt Realty Co.* v. *Wood*, 230 N. Y. 646; *Gulttag* v. *Shatzkin*, 230 N. Y. 647; *810 West End Avenue, Inc.*, v. *Stern*, 230 N. Y. 652; *People ex rel. Rayland Realty Co.* v. *Fagan*, 230 N. Y. 653.)

It may be that the statute could have been improved insofar as the use of language is concerned. However, the legislative intent is clearly expressed and is applicable to the lease in question here notwithstanding the fact that it was entered into before the date of the enactment of the Commercial Rent Law. The argument now raised by the plaintiff that the statute impairs the obligation of an existing contract cannot be maintained where the public health and safety is concerned.

In *Matter of People* (*Tit. & Mtge. Guar. Co.*) (264 N. Y. 69, 84) Chief Judge LEHMAN states the law to be as follows: "The decisions of the United States Supreme Court do certainly establish these criteria: Legislation which impairs the obligation of a contract or otherwise deprives a person of his property can be sustained only when enacted for the promotion of the general good of the public, the protection of the lives, health,

morals, comfort and general welfare of the people and when the means adopted to secure that end are reasonable. Both the end sought and the means adopted must be legitimate, *i. e.*, within the scope of the reserved power of the State construed in harmony with the constitutional limitation on that power. Even ' the economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' (*Home Building & Loan Assn.* v. *Blaisdell, supra.*) "

In my opinion the Commercial Rent Law is constitutional and it follows that the defendant is entitled to judgment dismissing the plaintiff's complaint under rule 112 of the Rules of Civil Practice.