Samuel Rabin, J.
In this action brought to foreclose a second mortgage on a one-family house, plaintiff moves for summary judgment striking out the amended answer. The principal defendants cross-move for summary judgment dis *864 missing the complaint and for affirmative judgment on their counterclaims.
The mortgage was executed on April 30, 1954, by the defendant 187-20 Tioga Drive Corp. (hereinafter called Tioga Corporation) to secure the payment of $4,200 to the Modern Funding Corp. which assigned it to the plaintiff on the same day it was executed.
Prior to that time the defendants Cliffert and Dorothy Smith were the owners of a one-family dwelling at 187-20 Tioga Drive, Queens County, New York. In answer to an advertisement broadcast over the radio, Cliffert Smith called the Modern Funding Corp. and asked to borrow $2,700. One of their men came to look at the house and told Mr. Smith that he ‘ ‘ would have to be incorporated.”
One or two days later two men representing the plaintiff came to look at the house and asked Mr. Smith how much he had “put in for.” He said, $2,700. On April 30, 1954, the Smiths signed some papers including a bond and mortgage by the Tioga Corporation for $4,200 with interest at 6%. The Smiths received three checks totaling only $2,690 and a payment booklet containing provisions for 36 monthly payments of $127.78 to be made to the plaintiff.
In plaintiff’s moving affidavit, made by its attorney who is also an officer of plaintiff corporation, plaintiff states that it purchased the mortgage for $3,600 which it describes as “ a fair and reasonable discount inasmuch as it has always been good business practice, and in my opinion always will be a custom and practice of second mortgages, that a bonus will be charged for such loans.”
There is, therefore, no dispute that the loan was usurious, but plaintiff contends that since the mortgage was made by a corporation, defendants may not plead usury as a defense, and that the amendments to the statute, permitting certain corporations to plead usury, are inapplicable to mortgages executed before the statute was amended.
Section 374 of the General Business Law, as most recently amended (L. 1957, ch. 968, eff. April 26, 1957), reads as follows:
“1. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships.
‘ ‘ 2. The provisions of subdivision one of this section shall not apply to a corporation, the principal asset of which shall be the ownership of a one or two family dwelling, where it *865 appears either that the said corporation was organized and created, or that the controlling interest therein was acquired, within a period of six months prior to the execution, by said corporation of a bond or note evidencing indebtedness, and a mortgage creating a lien for said indebtedness on the said one or two family dwelling; provided, that as to any such bond, note or mortgage executed by such a corporation and effective prior to April sixth, nineteen hundred fifty-six, the defense of usury may be interposed only in an action or proceeding-instituted for the collection, enforcement or foreclosure of such note, bond or mortgage.
“Any provision of any contract, or any separate written instrument executed prior to, simultaneously with or within sixty days after the delivery of any moneys to any borrower in connection with such indebtedness, whereby the defense of usury is waived or any such corporation is estopped from asserting it, is hereby declared to be contrary to public policy and absolutely void.” By its terms the statute applies to mortgages executed prior to April 6, 1956, in any action to foreclose such mortgages.
Plaintiff argues that to give the amendments retroactive effect would be unconstitutional. Research shows, however, that the statute is procedural only and has always been so regarded.
The present statute is derived from chapter 172 of the Laws of 1850. When first enacted it was held to be procedural and to apply to pending actions. In Curtis v. Leavitt (15 N. Y. 9, 173) the Court of Appeals said: “It was competent to the legislature to make this law. It did not impair the obligation of this contract, but affected the remedy only, by depriving the borrower of a defence in the nature of a penalty or forfeiture.” (See, also, Southern Life Ins. & Trust Co. v. Packer, 17 N. Y. 51, 52; Rosa v. Butterfield, 33 N. Y. 665, 668.)
The original policy underlying the statute was clearly set forth in Southern Life Ins. & Trust Co. v. Packer (supra, pp. 53-54) as follows: “ These laws were originally based upon the assumption that the needy borrower was in some degree in the hands of the lender. Government has therefore assumed that it was a duty incumbent upon it to protect the former against the rapacity of the latter by adequate pains and penalties. In regard to natural persons, subject to the contingencies of business, often with little or no capital to start with; these considerations might apply with great force; but in regard to corporations organized for the purpose of concentrating'in one undertaking the contributions of - a .large *866 number of individuals until the aggregate shall amount to the capital supposed to be requisite for the successful prosecution of such undertaking, the legislature may well have assumed that no such protection was necessary; that if corporations thus organized became borrowers it would not be from necessity,, but voluntarily, to enable them to carry forward some enterprise which afforded a reasonable expectation of profits sufficient to enable them to repay the necessary interest without loss or sacrifice.”
The present policy underlying the amendments which rescinded the disability of certain corporations to plead usury was set forth by the Legislature, itself (L. 1957, ch. 968, § 1), as follows:
‘ ‘ The people of this state have a vital interest in encouraging its citizens to establish and maintain one and two-family home-owning communities, and in preventing the imposition of oppressive and unethical economic burdens upon the members of such communities. It is hereby declared that unfair, unjust, destructive, demoralizing and uneconomic practices have been and are now being carried on by money lenders using the corporate device to accomplish the exaction of oppressive and usurious rates of interest or other compensation for loans secured by mortgages upon such homes.
“ To protect the well-being of our citizens, to protect the public welfare, to prevent the loss of such houses by the members of such communities through the foreclosure of mortgages securing such oppressive, unreasonable and usurious loans, to prevent the owners of such homes from becoming a burden upon the community and in furtherance of the public policy of this state that such home owners be encouraged to establish and maintain one and two-family home-owning communities, the following provisions [§ 374, as amd.] are enacted in the exercise of the police power of the state.”
Prior to the recent amendments money lenders must have realized that these usurious transactions violated, if not the letter, at least the spirit of legislation declaring an important social policy of the State. If they had discovered a loophole by which they could nullify that policy, they should have anticipated that corrective legislation would eventually be enacted to prevent such frustration.
Even bona fide contracts, lawful in letter and spirit when made, must in appropriate cases yield to the paramount police power of the State to legislate for the health and welfare of the community. (Gelfert v. National City Bank, 313 U. S. 221; Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398; Veix v. *867 Sixth Ward Assn., 310 U. S. 32; Levy Leasing Co. v. Siegel, 258 U. S. 242; Honeyman v. Clark, 278 N. Y. 467, affd. sub nom. Honeyman v. Jacobs, 306 U. S. 539; Twentieth Century Associates v. Waldman, 184 Misc. 24, affd. 294 N. Y. 571, appeal dismissed 326 U. S. 696.)
The foregoing cases are concerned with legislation enacted to promote the welfare of the community in business relationships. A fortiori, the protection of homes and, with them, of family life, is a subject even more directly related to public welfare.
It will also be observed that the legislation is carefully designed to meet the evil to be corrected. It is restricted to corporations whose principal asset is a one- or two-family dwelling and which were organized or whose controlling interest was acquired within six months prior to the execution of the bond and mortgage covering the dwelling. Thus, there are exempt from the scope of the statute corporations which presumably are not being used merely as a sham to disguise the borrower. The legislation is, therefore, constitutional.
Plaintiff further argues that since it required and received an estoppel certificate from the Tioga Corporation, the various defenses, even if valid, cannot be interposed in this action. In the first place, the statute itself (General Business Law, § 374) declares void any instrument whereby the corporation would be estopped from asserting the defense of usury if such instrument was executed prior to, simultaneously with, or within 60 days after the delivery of any moneys to the borrower.
¡Moreover, it is not denied that plaintiff through its employees inspected the property and inquired how much the Smiths were borrowing. It was, therefore, on notice as to the true facts about the loan and cannot claim to have relied on the estoppel certificate. Under such circumstances, the estoppel certificate avails the plaintiff naught. In Wilcox v. Howell (44 N. Y. 398, 403), the court said: “ If all other things concurred necessary to constitute the estoppel, the plaintiff could not have the benefit of it unless he believed in and relied upon the statement of facts made. It is not sufficient that he believed that, as a matter of law, the certificate would protect him, and hence that he would not have purchased the mortgage without it. He must have believed the facts stated, and in good faith have relied upon them as true, and in this reliance must have purchased. (Shapley v. Abbott, 42 N. Y., 443.) ” It follows, therefore, that defendants are not estopped from asserting the defense of usury.
*868 Plaintiff’s motion for summary judgment must be and is' denied and the defendants’ cross motion is granted to the extent of dismissing the complaint. The counterclaims, however, whereby defendants seek cancellation of the bond and mortgage, will have to be severed and await trial since, as to mortgages executed prior to April 6, 1956, “ the defense of usury may be interposed only in an action or proceeding instituted for the collection, enforcement or foreclosure of such note, bond or mortgage.”
Submit order.