Walter R. Hart, J.
The individual defendants appeal from an order granting plaintiff summary judgment and denying their cross motion for summary judgment. While the cross notice of motion by defendants states they were moving ‘ for an order dismissing the complaint on the grounds that the same does not set forth a cause of action and is unenforcible in law,” the court below and the parties deemed it a motion for summary judgment. It will be so considered for the purposes of this appeal in view of the provision of rule 113 of the Rules of Civil Practice that where one party moves for summary judgment and it appears that the opposing party is entitled thereto, the court may award such judgment even in the absence of a cross motion therefor.
The oral complaint alleges two causes of action, one for money loaned in the sum of $1,119.32 and the second upon a collateral bond for money loaned to the corporate defendant which the individual defendants agreed to pay. The corporate defendant at no time appeared or answered. The original answer of the individual defendants pleaded a general denial and three separate defenses, viz., (1) usury; (2) that the collateral bond was procured by fraud; and (3) that the court did not have jurisdiction of the parties. Defendants, subsequent to. the joinder of issue, without leave of the court, filed an amended answer containing four affirmative defenses. The first two were the same as originally pleaded, i.e., usury and fraud; the third alleged a violation of section 131 of the Banking Law and section 18 of the General Corporation Law; the fourth alleged usury ‘ ‘ within the meaning and intent of Chapter 968 of ttíe Laws of New York, effective April 26,1957.”
From the moving affidavit of Max Sokoloff, an attorney and officer of plaintiff corporation, it appears that on October 16, 1954 the defendant corporation, by defendant John H. Robson, Jr., as president, executed and delivered to plaintiff a second mortgage on certain real property; that, the individual defendants executed a collateral bond in the sum of $2,900 with 6% interest payable in monthly installments of $88.23; that 22 payments were made, leaving a balance of $1,119.32 which defendants refused to pay.
*145 It is undisputed that instead of $2,900 approximately $2,000 was advanced to the defendants at the time of the closing of the transaction. Sokoloff swears that he told defendants that the loan would not be made at the rate of 6% and that they would be required to incorporate (the purpose being to permit a greater interest rate than 6%); that he advised defendants to retain their own attorney but they stated they did not want to incur the expense of retaining counsel; that he explained that the title to their property would be conveyed to the corporation and the loan made to it secured by a second mortgage, and that they would be required to sign a collateral bond. Thereafter, according to affiant, the corporation was duly organized, the original subscribers resigned and the stock was transferred to defendants who, together with their appointees, were elected officers and directors. At the closing, the legal significance of each paper signed by defendants, copies of which were delivered to them, was explained to them and the corporate kit surrendered to them.
In opposition to the motion and in support of the cross motion defendant John H. Robson, Jr. submitted an affidavit wherein he swore: He was at no time represented by an attorney, and did not know until the action was brought that ‘ ‘ his dwelling was to be formed into a corporation ”; that plaintiff’s attorney, an officer of the plaintiff corporation, at the time of the transaction, acted on his behalf; that some of the moneys advanced to the defendants were paid to said attorney as counsel fees; that at that time he was unaware of the fact that the attorney was an officer of plaintiff corporation; that he was not informed that a corporation was being formed of which he and his wife were to be officers and stockholders therein; and that he never received any certificate of incorporation or other corporate records, but was merely told that the papers signed were a bond and mortgage necessary for recording purposes. The affiant further stated that the first inkling he had as to the existence of a corporation was when he received a notice from the State Tax Department that franchise reports had not been filed; that he did not know until subsequent to the action that title to his one-family house had been transferred by him to the corporation. Affiant then referred to the amendment to section 374 of the General Business Law and asserted that this was a good defense to the action.
In a reply affidavit Sokoloff denied the imputations of fraud and asserted that defendants were advised of each ster> in the transaction.
*146 Upon this appeal defendants urge that the motion for summary judgment should have been denied because of plaintiff’s fraud, usury, and violation of section 18 of the General Corporation Law and section 131 of the Banking Law in regard to unauthorized discounts. In my opinion sufficient facts were adduced by defendants’ affidavit to entitle them to a trial of the issue of fraud. If, in fact, defendants were induced by fraud to transfer their property to the corporation, this might be sufficient to defeat the action. Although defendants’ claim of ignorance of the form and substance of the transaction is difficult to credit, it may not be summarily disposed of on the instant motion.
Addressing myself to defendants’ cross motion, the contention that the transaction constituted a discount in violation of section 18 of the General Corporation Law and section 131 of the Banking Law may be readily disposed of by reference to the case of Amherst Factors Inc. v Kochenburger (7 Misc 2d 265, affd. 4 A D 2d 745) where it was held that the interdictions of these statutes were not applicable to the discount of loans secured by mortgages on real property.
A more serious issue raised by defendants is the applicability of section 374 of the General Business Law, as amended by chapter 968 of the Laws of 1957, effective April 26, 1957, which reads as follows:
“ 1. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships.
‘ ‘ 2. The provisions of subdivision one of this section shall not apply to a corporation, the principal asset of which shall be the ownership of a one or two family dwelling, where it appears either that the said corporation was organized and created, or that the controlling interest therein was acquired, within a period of six months prior to the execution, by said corporation of a bond or note evidencing indebtedness, and a mortgage creating a lien for said indebtedness on the said one or two family dwelling; provided, that as to any such bond, note or mortgage executed by such a corporation and effective prior to April sixth, nineteen hundred fifty-six, the defense of usury may be interposed only in an action or proceeding instituted for the collection, enforcement or foreclosure of such note,, bond or mortgage. (Italics supplied.)
“ Any provision of any contract, or any separate written instrument executed prior to, simultaneously with or within *147 sixty days after the delivery of any moneys to any borrower in connection with such indebtedness, whereby the defense of usury is waived or any such corporation is estopped from asserting it, is hereby declared to be contrary to public policy and absolutely void.”
The emphasized language was added by the Laws of 1957. In an attempt to justify the retrospective effect of the statute, the Legislature made the following declaration of policy:
‘ ‘ The people of this state have a vital interest in encouraging its citizens to establish and maintain one and two-family home-owning communities, and in preventing the imposition of oppressive and unethical economic burdens upon the members of such communities. It is hereby declared that unfair, unjust, destructive, demoralizing and uneconomic practices have been and are now being carried on by money lenders using the corporate device to accomplish the exaction of oppressive and usurious rates of interest or other compensation for loans secured by mortgages upon such homes.
“ To protect the well-being of our citizens, to protect the public welfare, to prevent the loss of such houses by the members of such communities through the foreclosure of mortgages securing such oppressive, unreasonable and usurious loans, to prevent the owners of such homes from becoming a burden upon the community and in furtherance of the public policy of this state that such home owners be encouraged to establish and maintain one and two-family home-owning communities, the * * provisions * * * are enacted in the exercise of the police power of the state.”
Plaintiff challenges the validity of the retrospective feature of the statute contending that it impairs the obligation of a valid contract and is therefore in contravention of the Federal Constitution. This point appears to be well taken.
Unquestionably, the agreement with which we are here concerned was not usurious when made. The usury statute as amended in 1850 provided that “ No corporation shall hereafter interpose the defense of usury.” It is significant to observe that the foregoing amendment has been construed to mean that not only is the defense of usury unavailable to a corporation but that the original transaction is valid and not usurious as a matter of substantive law (Rosa v. Butterfield, 33 N. Y. 665). In the cited case the court held that where a contract provided that a corporation pay more than 7% for a loan of money, a surety for its repayment could not set up the defense of usury; that since the contract was binding on the borrower, it was valid as to the surety. In arriving at this *148 result the court stated (pp. 669-670): “In my judgment, the question on which the cases depend is, whether the act of 1850 has operated to make lawful the contract of a corporation for the loan of money to itself, which would otherwise he usurious. If it stops short of that effect, and leaves the contract still obnoxious to the vice of usury, though the corporation itself and its privies in estate are interdicted by statutory estoppel, from saying so, I see no -sound reason why the defendants may not assert the fact in their own defence. To make the contract lawful, the act must be held either to have affected a repeal of the usury laws as to the borrowing contracts of corporations, or to have made such contracts an exception to the operation of those laws. * * *
‘ ‘ Upon these provisions of the statutes the legislature has engrafted another, which, as the later expression of its will, is of superior potency, declaring that no corporation shall assail or defend its contracts on either ground of these statutory provisions. Now, as there is no defence nor offence except through those provisions, is it not a logical and necessary consequence that the vice which constitutes them does not exist under the law in respect to such contracts? If the law which creates the taint declare that it shall not be alleged to exist as to a certain class of contracts, or be asserted by a certain class of persons to annul their contracts, is not this quite equivalent to saying that those contracts are free from this taint, and outside of its consequences? ” (Emphasis supplied.)
The court in commenting on Butterworth v. O’Brien (28 Barb. 187), which held that a corporation may not sue to recover for usurious payments which it had made (affd. 23 N. Y. 275), stated (p. 672): “ That decision, I think, is sustainable only on the ground that the contract to loan money made by a corporation is no longer usurious ”.
To fortify its conclusion the court in the Rosa case quoted from Curtis v. Leavitt (15 N. Y. 9) which held that the receiver of a corporation could not claim usury, as follows: “It is unmistakable that this decision was reached upon the idea that the act of 1850 operated as a partial repeal of the usury laws of this State. ‘ My impression is, ’ said Comstock, J., ‘ that the act must be construed as a repeal of the statutes of usury as to all contracts of corporations stipulating to pay interest, thus leaving the contracts in full force according to their terms and that such an act is liable to no constitutional objection.’ (15 N. Y., p. 85.) Beowk, J., (at page 154), in language more explicit and emphatic, said, ‘ The effect of the act of April, 1850, is to repeal the statute of usury so far as it applies to corporations, *149 the condition of this class of contracts becomes the same as if the usury laws never existed. * * * The barrier wall, the place of strength which the usury laws set up between the lender and the borrower, is thrown down and leveled with the ground, whenever the borrower is a corporation. Henceforth, the law offers no rewards for bad faith and broken promises to this class of contractors.’ Paige, J. (at page 229), says: ‘ The act of 1850 is in substance a repeal of the statutes of usury so far as relates to corporations. The language as well as the spirit of the act applies to antecedent as well as subsequent usurious agreements’” (pp. 672-673).
Further authority for the premise that the taint of usury does not attach to contracts made by corporations as borrowers is to be found in Jenkins v. Moyse (254 N. Y. 319). There an action was brought to cancel a mortgage on the ground of usury, plaintiff contending that defendant, as a condition for a loan greatly in excess of the mortgage, required the plaintiff to organize a corporation and transfer his property to the corporation which then became the borrower. It was urged that this was done to circumvent the usury statute and that the transaction was void. In reversing the judgment in favor of plaintiff and dismissing the complaint, the court stated (p. 324):
“ The transaction here had its inception in a loan which the defendants would not make to the plaintiff because it would have been usurious but which they agreed to make to a corporation which the plaintiff formed because a loan to a corporation is not usurious. The corporate mortgage when executed had a valid inception and was free from the taint of usury. It does not become invalid because, perhaps, the corporation was formed as part of a plan whereby the defendants might keep outside of the statute and still obtain a return from the investment greater than the rates allowed by the statute under other circumstances. (Dunham v. Cudlipp, 94 N. Y. 129.)
‘ ‘ The corporate entity may be disregarded where it is used as a cloak or cover for fraud or illegality. For that there is ample authority. Here the corporate entity has been created because the statute permits a corporate entity to make a contract which would be illegal if made by an individual. The law has not been evaded but has been followed meticulously in order to accomplish a result which all parties desired and which the law does not forbid.
“ Corporations are, ordinarily, created because through the corporate form some advantage is obtained which would be denied to an individual or a group of individuals. That has been done here, and no ground has been shown for disregarding *150 the corporate entity, though that entity has been formed for the purpose of doing something permitted to a corporation but forbidden to an individual.” (See, also, New York Credit Men’s Assn. v. Manufacturers Discount Corp., 298 N. Y. 512; Werger v. Haines Corp., 302 N. Y. 930.)
Since the agreement was valid in its inception, it is fundamental that the Legislature could not constitutionally deprive plaintiff of all of its rights vested therein. Clearly illustrative of this well-established principle is the following example on page 1128 of the Restatement of the Law of Contracts: “ A lends money to B who promises to repay it with 8 per cent, interest. Before the time for performance a law is enacted by the State in which A and B live and where the contract was made, making bargains for greater interest than 6 per cent, illegal. At the time the contract was made there was no prohibition of 8 per cent, interest. The contract is enforceable in spite of the legislation. If the legislation purports to invalidate existing contracts, it is to that extent unconstitutional and void.” (See, also, 16A C. J. S., Constitutional Law, § 358.)
A fortiori, if a Legislature may not retrospectively reduce the rate of interest as to existing contracts, it may not by statute nullify existing contracts valid in inception. This conclusion finds strong support in the case of First Ecclesiastical Soc. of Suffield v. Loomis (42 Conn. 570); Edworthy v. Iowa Sav. & Loan Assn. (114 Iowa 220). In each of these cases loans, usurious when made, were thereafter validated by curative legislation which was subsequently repealed. The courts in both cases held that once the contract had become valid, the repeal of the legislation could not thereafter render them void for usury. The court in the Edworthy case stated (p. 223): “ It has been said that, so far as the provisions of the federal constitution are concerned, if a law devesting private rights does not impair the obligation of contracts, or is not ex post facto it is within legislative power. * * * We are of the opinion that the rights which accrued to defendant under the curative act are saved to it, both because the repeal, if it affected them would impair the obligation of contract, and because it would disturb or take away vested rights.”
The ease of Brierley v. Commercial Credit Co. (43 F. 2d 724, affd. 43 F. 2d 730, cert, denied 282 U. S. 897) is squarely in point with the case here on appeal. There an action was brought by a receiver of a corporation to recover allegedly usurious payments made by the corporation to the defendant. The plaintiff relied, among other grounds, on a statute passed in 1929 which amended the Pennsylvania statutes which there *151 tofore prohibited corporations from pleading usury, so ¿s to provide: “ this act shall not apply to * * * any suit or action instituted subsequent to the effective date of the act of April twenty-seventh, one thousand nine hundred and twenty-seven, upon any mortgage, bond, note or other obligation executed or assumed by said corporation prior to the effective date of the said act of April twenty-seventh, one thousand nine hundred and twenty-seven.” In holding that this statute was unconstitutional in its retrospective aspect, the court stated (p. 729): “But, in its application to the instant suit, I think that the act of 1929 violates the due process clause of the Fourteenth Amendment of the Constitution. On May 8, 1929, the credit company had received from Lorimer payments of money as interest upon its loans amounting to approximately 18 per cent. This money had been paid under a contract which, both at the time of making and at the time of payment, was perfectly legal and valid in the state of Pennsylvania because Lorimer was a corporation and could contract for and pay interest at any rate it saw fit. If the act of 1929 were operative upon this contract, its effect would be to give Lorimer the right to recover a portion of these payments amounting to $54,328.51. "While retrospective legislation is not unconstitutional as such, it may be so when it operates to deprive parties of property or vested rights. Koshkonong v. Burton, 104 U. S. 668, 26 L. Ed. 886.”
An argument advanced in favor of the validity of the statute now under consideration is that it relates to a remedy rather than a substantial right. This argument was considered and rejected in Sliosberg v. New York Life Ins. Co. (244 N. Y. 482) where the court held unconstitutional a statute staying all actions on insurance policies issued by a New York life insurance company in Russia prior to the revolution until such time as a de jure government was recognized by the United States. There the court stated (pp. 495-496): “The obligation of a contract, which may not be impaired, does not include the particular remedies provided by a State for its enforcement at the time of the inception of the contract, so that the same are made immune from alteration or modification. The withdrawal of all remedies, however, does impair the obligation. Otherwise the owner of a broken promise would find his cause of action to be nothing more than that ‘ metaphysical subtlety ’ (to borrow an expression of Professor Ames — see Lectures on Legal History, p. 199), ‘ an immortal right to bring an eternally prohibited action.’ Moreover, a substantial impairment of a means of enforcement is an impairment of the contract obligation. (Sturges v. Crowninshield, 4 Wheat. [U. S.] 122; McCracken v. *152 Hayward, 2 How. [U. S.] 608; White v. Hart, 13 Wall. [U. S.] 646; Edwards v. Kearzey, 96 U. S. 595; Bronson v. Kinzie, 1 How. [U. S.] 311; Penniman’s Case, 103 U. S. 714.) In the case last cited the Supreme Court said: ‘ The general doctrine of this court on this subject may be thus stated: In modes of proceeding and forms to enforce the contract the Legislature has the control, and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right. ’ Statutes suspending, for an indefinite period, all proceedings to enforce a contract have very generally been held to be unconstitutional.”
Further authority for this rule of law is found in Home Bldg. & Loan Assn. v. Blaisdell (290 U. S. 398) where the court stated (pp. 429 — 430): “ The obligation of a contract is ‘ the law which binds the parties to perform their agreement. ’ Sturges v. Crowninshield, 4 Wheat. 122, 197; Story, op. cit., § 1378. This Court has said that ‘ the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement. * . * * Nothing can be more material to the obligation than the means of enforcement. * * * The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. ’ Von Hoffman v. City of Quincy, 4 Wall. 535, 550, 552. See, also, Walker v. Whitehead, 16 Wall. 314, 317. But this broad language cannot be taken without qualification. Chief Justice Marshall pointed out the distinction between obligation and remedy. Sturges v. Crowninshield, supra, p. 200. Said he: ‘ The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct. ’ And in Von Hoffman v. City of Quincy, supra, pp. 553, 554, the general statement above quoted was limited by the further observation that ‘ It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired.”
At page 433 the court pointed out: “ But, in Penniman’s Case, 103 U. S. 714, 720, the Court decided that a statute abolishing imprisonment for debt did not, within the meaning of the Con *153 stitution, impair the obligation of contracts previously made; and the Court said: ‘ The general doctrine of this court on this subject may be thus stated: In modes of proceeding and forms to enforce the contract the legislature has the control, and may enlarge, limit or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right.’ ” (See, also, 16A C. J. S., Constitutional Law, §§ 256, 381, 385.)
Another argument advanced to sustain the validity of the statute here being considered is that it is bottomed on a proper exercise of the State’s police power. While under that power the State may interfere with existing contractual rights, there are definite limitations. These have been set forth in Home Bldg. & Loan Assn. v. Blaisdell (290 U. S. 398, supra). There the court had before it the issue of the constitutionality of the Minnesota mortgage moratorium law. The Legislature of that State, after determining that an emergency existed, provided by a statute passed in 1933 for an extension of the time allowed by existing law for the redemption of real property which had been foreclosed by applying to the State court on notice to the mortgagee. The court, as a condition to granting an extension until no later than May 1, 1935, was to fix the reasonable rental or income value and require payment thereof towards taxes, insurance, interest and principal. The Supreme Court on appeal stated (pp. 438, 439-440): “ The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. * * *
“ Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a temporary restraint of enforcement may be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the reserved power of the State to protect the vital interests of the community. It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to *154 the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake. See American Land Co. v. Zeiss, 219 U. S. 47. The reservation of state power appropriate to such extraordinary conditions may be deemed to be as much a part of all contracts, as is the reservation of state power to protect the public interest in the other situations to which we have referred. And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes.” (Emphasis supplied.)
The Supreme Court concluded that the Minnesota statute was constitutional because (1) an emergency existed; (2) the legislation was addressed to a legitimate end — that it was not for the mere advantage of particular individuals but for the protection of a basic interest of society; (3) that the relief afforded was granted on reasonable conditions; (4) the period of the extension of time was not unreasonable; (5) the legislation was temporary in nature. The court there pointed out that “ the integrity of the mortgage indebtedness is not impaired; interest continues to run ” (p. 445).
Where conditions and limitations upon the rights and remedies of creditors have been unreasonably interfered with by statute, the Supreme Court has not hesitated to strike it down as unconstitutional. This is illustrated in Worthen Co. v. Kavanaugh (295 U. S. 56) which involved an appeal from the Supreme Court of Arkansas. In that .case negotiable bonds secured by a mortgage of benefit assessments had been issued by a municipal improvement district. Several years later, purporting to act because of an emergency, the Legislature enacted a statute which greatly reduced the remedies available to enforce the security, as follows: The time within which an assessment might be foreclosed and the land sold for default in payment was increased from 65 days to 2% years and longer; provision for a 20% penalty was reduced to 3% and the provisions for costs and attorneys’ fees were repealed; the provision that a purchaser at the foreclosure sale could go into possession and keep the rents and profits during the redemption period was also repealed, so that the owner of the land could remain for another four years without any payment. As a result, the mortgagee was left for at least 6% years without any effective remedy to collect installments of principal or interest. In holding the statute unconstitutional, the court, by Mr, Justice Cardozo, stated (p. 62): “ Whether one or more of *155 the changes effected by these statutes would be reasonable and valid if separated from the others, there is no occasion to consider. A state is free to regulate the procedure in its courts even with reference to contracts already made (Bronson v. Kinzie, 1 How. 311), and moderate extensions of the time for pleading or for trial will ordinarily fall within the power so reserved. A different situation is presented when extensions are so piled up as to make the remedy a shadow. Penniman’s Case, 103 U. S. 714, 720; Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437; Henley v. Myers, 215 U. S. 373, 385; National Surety Co. v. Architectural Decorating Co., 226 U. S. 276. What controls our judgment at such times is the underlying reality rather than the form or label. The changes of remedy now challenged as invalid are to be viewed in combination, with the cumulative significance that each imparts to all. So viewed they are seen to be an oppressive and unnecessary destruction of. nearly all the incidents that give attractiveness and value to collateral security.”
In the light of the foregoing the conclusion is inescapable that chapter 968 of the Laws of 1957 is invalid insofar as it is retrospective in effect by providing that a corporation may plead usury as a defense to a contract which had a valid inception. It impairs the obligation of that contract and is therefore invalid to such extent.
I am not unmindful of the result reached in another case involving this same plaintiff (Sohmer Factors Corp. v. 187-20 Tioga Drive Corp., 9 Misc 2d 862). However, I respectfully differ with the conclusion reached therein and believe that the authorities relied on are readily distinguishable either in principle or on the facts.
The order appealed from should be modified, without costs by providing that plaintiff’s motion for summary judgment be denied.
Pette and Di Gtovanna, JJ., concur.
Order unanimously modified so as to provide that plaintiff’s motion for summary judgment is denied and as so modified affirmed, without costs on this -appeal.